### SNELL et al. v. FRANK SNELL SAWMILL CO. et al.

(District Court, S. D. Georgia, S. W. D. March 12, 1921.)

1. **Corporations** ⬅577(6)—**In suit for a receiver and sale of assets by persons interested in profits from the sale, complainants' attorneys not entitled to fees, in absence of profits.**

   Where a contract between complainants, defendant, and a corporation, under which defendant purchased all the stock and bonds of the corporation, provided that complainants were to be officers of the corporation and receive a certain share of the net profits on the common stock, and on an attempt to remove one of them from the management of the corporation's business complainants sued for a receivership and sale of the assets, and by consent a sale was made, but there were no proceeds distributable on the common stock, complainants' solicitors were not entitled to fees out of the fund.

2. **Corporations** ⬅560(5)—**Under decree in suit for receiver and sale of assets, court held to have jurisdiction to fix fees of attorneys and enter judgment therefor on bond of purchaser.**

   In a suit for a receivership and sale of corporate assets, in which a sale was made by consent and the property was purchased by a new corporation formed by one of the defendants, and a decree required the purchaser to give bond to pay any compensation allowed the receiver, which bond was to take the place of a sufficient amount of money to pay any claims of that character, the court had jurisdiction to fix a reasonable sum as attorney's fees for such defendant's solicitors and enter judgment therefor on the bond.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Attorney and client** ☜140—**Attorney, by accepting less than reasonable fee, cannot affect rights of other attorneys.**

Where a number of attorneys were associated in the conduct of litigation, one of them could not, by accepting from their joint client less than a reasonable fee, deprive the other attorneys of a reasonable fee.

Suit by Frank N. Snell and another against the Frank Snell Sawmill Company and another. On interventions by solicitors for an allowance of fees. Allowance to complainants' solicitors denied, and allowance to defendants' solicitors granted.

W. M. Toomer, of Jacksonville, Fla., for complainants and for Toomer & Dickerson.

Max Isaac, of Brunswick, Ga., for interveners Wilson & Bennett.

W. H. Rogers, of Jacksonville, Fla., and Max Isaac, of Brunswick, Ga., for interveners Reynolds & Rogers.

Samuel Silbiger, of Brooklyn, N. Y., and E. K. Wilcox, of Valdosta, Ga., for respondents.

BEVERLY D. EVANS, District Judge. A tripartite agreement was made between the Frank Snell Sawmill Company, a Florida corporation, party of the first part, the J. C. Turner Lumber Company, a New York corporation, party of the second part, and Frank N. Snell and Jay E. Rice, parties of the third part, in substance as follows:

The Turner Company was to purchase all the first mortgage bonds of the Snell Company for $170,000, the issued second mortgage bonds for $70,000 (the latter sum to be used in the payment of outstanding indebtedness, not to exceed $55,000, balance to be used for working capital), all the preferred and common stock of the Snell Company for a sum not to exceed $57,500 and to advance operating expenses of the Snell Company for a period of three months. The Snell Company agreed to pay the Turner Company $1.50 per 1,000 by scale for all timber manufactured and received by it. The Turner Company was made the exclusive selling agent of the Snell Company on a stated commission. The directors of the Snell Company were to resign, and to be replaced by others named, including Frank N. Snell and Jay E. Rice; Snell was to be president and treasurer, and Rice was to be assistant secretary and treasurer, at the monthly salary which was stated, to be charged up as a part of the cost of manufacturing the lumber. In addition to this compensation, Snell and Rice were to receive 42 per cent. of the net profits of the Snell Company, after the payment of the first and second mortgage bonds, the retirement of preferred stock at par, and the payment of all loans, advances, and expenses incurred in the manufacture of the timber. It was stated that—

"It is not the intent hereby to give to said parties of the third part a contract of permanent employment, but such employment shall continue as long as the business is efficiently managed and conducted to the satisfaction of the party of the second part, and it is the intent by the payment of the 42 per cent. net profit to the said parties of the third part, to distribute the compensation between them in such proportion as will enable the said Frank N. Snell to realize the equivalent of dividends on $120,000 worth of common stock, and the said Jay E. Rice to realize the equivalent of dividends on $25,000 worth of common stock, all the parties herein realizing and agreeing that at the

present time the common stock of said corporation, the party of the first part, has no value."

The Frank Snell Sawmill Company operated a sawmill in Clinch county, Ga. A little over a year after the making of the foregoing contract, Frank N. Snell and Jay E. Rice filed an equitable petition in the superior court of Clinch county against the Frank Snell Sawmill Company and the J. C. Turner Lumber Company, pleading the foregoing contract, and alleging that on account of the advance in cypress and pine lumber the assets of the Snell corporation were sufficient to pay its bonded indebtedness and all other liabilities, and to almost, if not quite, liquidate its common stock. When it became apparent to the Turner Company that the Sawmill Company would probably realize handsome returns from the manufacture and sale of lumber, it determined to arbitrarily remove Frank N. Snell from the presidency and management of the Sawmill Company by corporate action of the Sawmill Company's stockholders and directors in the manner set out in the petition, which action was alleged to be illegal. The relief prayed was for the appointment of a receiver, for an accounting from the J. C. Turner Lumber Company for advances made to the Sawmill Company, and—

"That the entire business of the said Frank Snell Sawmill Company be liquidated, and a distribution of its net profits applicable to common stock be made on a basis of 58 per cent. to said J. C. Turner Lumber Company and 42 per cent. to your petitioners in the proportion that $120,000 bears to $25,000."

A temporary receiver was appointed by an ex parte order. The case was removed to the United States District Court for the Southern District of Georgia.

The respondents filed an answer, admitting the contract, and denying all charges of illegal conduct alleged against them. After averring, inter alia, that Frank N. Snell had refused on demand to deliver the proper officer of the Sawmill Company possession of the keys to the office, the combination to the safe, and the possession of the Sawmill Company's papers, the respondents prayed an injunction against Frank N. Snell from taking control of the office, etc., and for the vacation of the order appointing a receiver, or, in the alternative, that Snell be required to give bond to answer damages accruing by reason of the receivership.

The issues as made by the pleadings were informally discussed by counsel for the parties before me, the discussion resulting in an agreement upon a form of a decree which was entered with the consent of attorneys for all parties. This decree provided for the sale of the assets of the Frank Snell Sawmill Company. A receiver was appointed (the same in personnel appointed by the state court) to conduct the sale and report same for confirmation. In the decree it was adjudged that—

"After the payment of all costs of this administration, to be hereafter taxed and fixed by this court, the proceeds of said sale be distributed as follows:" (1) Payment of first mortgage bonds; (2) payment of second mortgage

bonds; (3) unsecured creditors; (4) holders of preferred stock; and, finally, the surplus, if any, to J. C. Turner Lumber Company, of one part, and the complainants, Frank N. Snell and Jay E. Rice, of the other part, in the following proportions: 58 per cent. thereof to J. C. Turner Lumber Company and 42 per cent. to Frank N. Snell and Jay E. Rice, complainants, said latter 42 per cent. to be divided between Frank N. Snell and Jay E. Rice in the ratio of 120 to 25."

The decree contains this clause:

"Eleventh. It is further ordered and decreed that the court hereby retains jurisdiction over this cause for further direction of said receiver, action upon any sale made as herein provided, the ascertainment and fixing payment of costs of administration, and other matters essential or material to the administration of said properties."

The receiver reported that he had sold the property for $390,958. Motions were made for the confirmation of the sale and an allowance of fees to complainants' solicitors. A decree was entered confirming the sale, and the proceeds of sale were ordered to be distributed as follows: (1) To J. P. Lynch, as expenses of administration, $25,641.83. (2) To J. C. Turner Lumber Company, to retire first mortgage bonds, $184,100. (3) To J. C. Turner Lumber Company, to retire second mortgage bonds, $87,746.66. (4) The sum of $93,469.51, the balance, ratably among J. C. Turner Lumber Company, Florida National Bank, and John P. Lynch, creditors, as their respective interests shall appear. It was further decreed that—

"the said purchaser file in this court a good and sufficient bond, in the sum of twenty thousand dollars ($20,000.00), to be approved by the deputy clerk of the United States District Court at Savannah, Ga., conditioned for the payment by it of any moneys hereinafter directed by the court to be paid to the receiver for his compensation, and the attorneys for the plaintiffs or the receiver, or any complainant permitted by the court to intervene and prove a claim herein, and judgment may be entered on said bond on summary motion."

The bond was given, and interventions filed by the solicitors for the complainants, and by Messrs. Wilson & Bennett, and Messrs. Reynolds & Rogers, solicitors for J. C. Turner Lumber Company, for an allowance of fees. These interventions are resisted by J. C. Turner Lumber Company, and are now before the court.

[1] 1. The complainants, Snell and Rice, insist that it was through their suit that the sale was made and the fund was produced, and hence they should be allowed compensation for their solicitors, as the fund was awarded to others. I do not think they stand in relation to the fund so as to have their counsel fees included in the cost of administration. The gist of the complainants' bill was to prevent Snell's removal from the management of the Snell Sawmill Company, and to have its assets applied to admittedly superior claims, on the theory that a surplus would remain for division between themselves and the J. C. Turner Lumber Company, under the clause of the tripartite agreement which provided for a distribution of profits. The Turner Lumber Company were the holders of the bonds and most of the unsecured indebtedness, and consented to a decree of sale. The complainants in the original bill filed in the state court did not attack the management of the Snell Sawmill Company up to the filing of their bill. Indeed, they

could not, because the management was their own. It was admitted in the bill that the indebtedness of the company and the two mortgages, as well as the liquidation of the preferred stock, were claims of superior dignity to their own.

Their claim was not based on the mismanagement of the Sawmill Company, but on an alleged recent development of a purpose on the part of the respondents to remove Snell from the management of the Sawmill Company, whereby complainants would lose a profit under their contract. It was not a creditors' bill, nor in the nature of one; it was not a stockholders' suit, nor in the nature of one. Its primary purpose was to prevent the removal of Snell and to have immediate ascertainment of complainants' alleged interest in the profits, and to have a decree for same. The appointment of a receiver and a sale of the property was ancillary to this primary purpose. Complainants and defendants owned all the stock of the Sawmill Company. Most probably the Turner Lumber Company took the view that the quickest and best way to dispose of the complainants' claim was to consent to a sale, and discover by that means whether in fact the assets of the company were sufficient to discharge their prior claims. At all events, they consented to a sale, and that sale disclosed that the common stock had not changed its money value since the contract, namely, it was still without any value. The complainants thus brought to an issue by a sale of the property of the Sawmill Company the crux of their controversy; i. e., whether they had a profit distributable to them under their contract. The sale demonstrated that they had none. There is no equitable principle, of which I am cognizant, which will allow compensation to attorneys of a complainant under the circumstances above set forth. Accordingly I deny the application for fees of complainants' counsel.

[2] 2. At the very outset of the litigation the J. C. Turner Lumber Company employed Samuel Silbiger, Esq., of New York, and Messrs. Wilson & Bennett, of Waycross, Ga. These counsel associated with them Messrs. Reynolds & Rogers, of Jacksonville, Fla. All the attorneys engaged in conducting the litigation for the respondents. After the termination on the litigation, Mr. Samuel Silbiger accepted from the Turner Lumber Company $5,000 as a fee for the services of all counsel, and proposed to his associates to give them 20 per cent. of it as their part. This offer was declined. My intention was, and I construe my order to mean, that in the distribution of the fund the bond was to take the place of a sufficient amount of money to pay any just claim of this character against the properties of the Sawmill Company.

I do not think that, if the actual money was in court, there could be any question that the attorneys and the Turner Lumber Company would be entitled to a lien on such fund for their reasonable attorney's fees. The order of the court considered that the purchaser was a new corporation, formed by the Turner Lumber Company for their convenience. The court did not require of them to pay over to the receiver the purchase price, on this idea. I am therefore of the opinion that I have the jurisdiction, and that it is proper that I should fix a reasonable sum as attorney's fees for respondents' solicitors for services rendered

in bringing about the sale, and the realization of the Turner Lumber Company because of their services, and that judgment for same should be entered on the bond.

[3] I think a conservative and reasonable fee for all of respondent's counsel would be $7,500. Mr. Silbiger could not, by accepting a less sum from the J. C. Turner Lumber Company, deprive Messrs. Wilson & Bennett or Messrs. Reynolds & Rogers of their reasonable fee by an agreement with their joint client. I consider the offer of 20 per cent. of $5,000, offered by Mr. Silbiger to his associates, as wholly inadequate to compensate them for their services.

I therefore fix as reasonable compensation for all counsel of the J. C. Turner Company the sum of $7,500; the manner of the distribution of this allowance amongst the attorneys is for them, and not for the court in this proceeding.

Let appropriate orders be presented to carry in effect these views.